# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-cv-20545-GAYLES/TORRES

**IVONNE DOME,**
**Individually and as Personal Representative**
**for the Estate of ROBERT DOME, deceased,**
**ALEC DOME, and AUSTIN DOME**,

      Plaintiff,

v.

**CELEBRITY CRUISES INC.,**

      Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Celebrity Cruises Inc.'s ("Defendant" or "Celebrity") Motion to Dismiss Plaintiffs' Complaint (the "Motion") [ECF No. 7]. The Court has considered the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiffs, Ivonne Dome ("Ivonne"), individually and as personal representative of the Estate of Robert Dome ("Decedent"), and their children, Alec Dome ("Alec") and Austin Dome ("Austin") (collectively, "Plaintiffs"), bring this wrongful death action against Defendant caused by a SARS-CoV-2 ("COVID-19") outbreak on board the *Celebrity Eclipse* (the "*Eclipse*") in March 2020. Ivonne and Decedent were passengers on the *Eclipse* between March 1 and March

---

[1] As the Court proceeds on a motion to dismiss, it accepts the allegations in Plaintiffs' Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

30, 2020, during which they contracted COVID-19. Alec and Austin—who were not passengers on the *Eclipse*—contracted COVID-19 from their parents after coming into contact with them on March 30, 2020.

## I.     Factual Background

### A.     Effects of the COVID-19 Pandemic on the Cruise Ship Industry

The COVID-19 pandemic, which has persisted since December 2019, has had notable effects on the cruise ship industry. For example, two cruise ships owned by Carnival Corporation experienced numerous COVID-19 outbreaks while off the coast of Japan and California in February 2020. On February 13, 2020, the Centers for Disease Control and Prevention ("CDC") published an *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, which provided ship operators with guidance on how to help prevent, detect, and medically manage suspected COVID-19 infections on ships. Recommendations included "[i]dentifying and isolating passengers and crew with possible symptoms of COVID-19," "[d]enying boarding of a passenger or crew member who is suspected to have COVID-19," and quarantining "[p]assengers and crew members who have had high-risk exposures to a person suspected of having COVID-19 . . . ." [ECF No. 1 at 10–11 ¶ 29] (citation omitted). On March 7, 2020, United States officials met with top cruise industry executives to address the impact of COVID-19 on the cruise industry. On March 8, 2020, the United States Department of State, in conjunction with the CDC, recommended "that U.S. citizens should not travel by cruise ship given the CDC's findings which support the increased risk of infection of COVID-19 in a cruise ship environment." *Id.* at 13 ¶ 34 (citation and internal quotation marks omitted). On March 14, 2020, the CDC issued its first No Sail Order, which applied to cruise ship operators.

B.     The *Celebrity Eclipse* Voyage

On February 5, 2020, prior to the *Eclipse* setting sail, Defendant emailed prospective *Eclipse* passengers—including Ivonne and Decedent—indicating that in light of the "global developments related to the coronavirus," "any guest, or crewmember, who [had] traveled to, from, or through China, Hong Kong or Macau within 15 days of departure [would] be unable to board" the *Eclipse*. *Id.* at 5. The email further indicated that increased health screening requirements would be implemented and outlined Defendant's "numerous proactive steps to maintain high health standards onboard [its] ships . . . ." *Id.* at 6.

On March 1, 2020, the *Eclipse* set sail from Argentina for a fourteen-night journey through Argentina and Chile, with approximately 2,500 passengers—including Ivonne and Decedent—and 750 crew members. On March 2, 2020, a passenger aboard the *Eclipse* began exhibiting flu-like symptoms consistent with COVID-19.[2] On March 9, 2020, numerous passengers aboard the *Eclipse* began exhibiting respiratory symptoms consistent with COVID-19 and sought medical care on the ship. On March 15, 2020, the Port of San Antonio, Chile—where the *Eclipse* was supposed to disembark passengers—denied the *Eclipse* entry to the port due to concerns of passengers and crew members who may have had COVID-19. Defendant continued to allow passengers to enjoy the voyage as normal without implementing quarantining and/or physical distancing measures.

On March 17, 2020, the Captain of the *Eclipse* issued a letter to the passengers stating that the ship had been denied entry and, therefore, would set sail for San Diego, California in order to disembark. Noting the "uncertainty during the escalation of this unprecedented situation," the letter stated that "a full schedule of entertainment, activities[,] . . . dining options," and complimentary

---

[2] Symptoms of COVID-19 include fever, dry cough, and/or shortness of breath, and it can cause severe pneumonia, acute respiratory distress syndrome, septic shock, multi-organ failure, and death. [ECF No. 1 at 7 ¶ 16].

beverage service would be provided during the remainder of the journey. *Id.* at 17–18 ¶ 36(v). The letter further stated that "[a]ll guests onboard remain[ed] healthy and happy . . . ." *Id.* Following the letter, Ivonne and Decedent continued participating in activities on the *Eclipse* because they were led to believe—based on the representation that passengers remained healthy—that they were safer on the vessel than on land. On March 26, 2020, a passenger aboard the *Eclipse* presented to the ship's infirmary and complained of COVID-19-like symptoms.

On March 28, 2020, the Captain of the *Eclipse* issued a second letter to passengers, which announced the vessel's arrival to San Diego on March 30, 2020, and detailed debarkation procedures for passengers. The letter directed passengers to maintain social distancing standards of six feet apart during debarkation and at the airport. The letter further stated that throughout the duration of the journey "a full schedule of entertainment, activities[,] and dining options," would continue, including complimentary in-stateroom movies and beverage service. *Id.* at 20–21 ¶ 36(y). The letter reiterated that "[a]ll guests onboard remain[ed] healthy and happy." *Id.* Again relying on the statements in the letter, Ivonne and Decedent continued to believe that they were safe on the *Eclipse* and that there were no COVID-19 cases onboard; as a result, both continued to participate in activities.

On March 29, 2020, Decedent began to experience unusual fatigue, a symptom associated with COVID-19, while aboard the *Eclipse*. On March 30, 2020, the *Eclipse* docked in San Diego, California, and passengers were permitted to disembark. Ivonne and Decedent returned to their home in New Jersey that day, though both felt that they were experiencing fatigue and flu-like symptoms consistent with COVID-19. Unaware of their parents' symptoms, Alec and Austin picked their parents up from the airport and drove them home. On April 2, 2020, Decedent tested positive for COVID-19. On April 5, 2020, Alec and Austin began experiencing fatigue and flu-

like symptoms consistent with COVID-19. On April 12, 2020, Decedent passed away at a hospital in New Jersey.

## II.     Procedural History

On February 9, 2021, Plaintiffs filed this twenty-one-count wrongful death action against Defendant. [ECF No. 1]. In the Complaint, Ivonne, individually and on behalf of the Estate of Decedent, raises the following claims against Defendant: (1) three counts of negligent failure to warn (Counts I, III, and IV); (2) two counts of negligent misrepresentation (Counts II and XV); (3) four counts of negligent management of an infectious disease outbreak aboard a vessel (Counts V, VI, VII, and VIII); (4) three counts of negligent boarding (Counts IX, X, and XI); (5) three counts of general negligence (Counts XII, XIII, and XIV); and (6) four counts of intentional infliction of emotional distress ("IIED") (Counts XVI, XVII, XVIII, and XIX). *Id.* Alec and Austin also bring two claims against Defendant: (1) negligent failure to warn (Count XX); and (2) negligent management of an infectious disease outbreak aboard a vessel (Count XXI). *Id.* On June 1, 2021, Defendant filed the instant Motion to Dismiss. [ECF No. 7].

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he

pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

## DISCUSSION

Defendant's Motion seeks to dismiss various portions of the Complaint. First, Defendant argues that the Death on the High Seas Act ("DOHSA") applies to Plaintiffs' claims and therefore their demand for pecuniary damages must be stricken. Second, Defendant argues that Plaintiffs' negligent misrepresentation claims lack the necessary specificity under Federal Rule of Civil Procedure 9(b) and are based on non-actionable statements. Third, Defendant argues that it does not owe a duty of care to Alec and Austin, nor was it on notice of Ivonne and Decedent's illness. Finally, Defendant argues that Plaintiffs' intentional infliction of emotional distress claims fail because Plaintiffs fail to establish that Defendant's actions were outrageous as a matter of law. The Court first addresses its jurisdiction over this matter and then considers each argument in turn.

## I.    The Court's Jurisdiction

The Court must consider whether it maintains subject matter jurisdiction over this case because "[f]ederal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020) (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). "That is so because subject-matter jurisdiction underlies a court's power to hear a case." *Id.* ("[S]ubject-matter jurisdiction can never be forfeited or waived."). In their Complaint,

Plaintiffs state that the Court has "subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332." [ECF No. 1 at 1 ¶ 3]. Plaintiffs allege, in the alternative, that "if diversity jurisdiction does not apply, then this matter falls under the Court's admiralty jurisdiction." *Id.* As to Plaintiffs, the Complaint states that they are "citizens of the United States and residents of New Jersey." *Id.* at 1 ¶ 1. As to Defendant, the Complaint states that it "is a foreign entity which conducts its cruise-related business from its principal place of business in Miami, Florida." *Id.* at 1 ¶ 2.

"Federal courts are courts of limited subject-matter jurisdiction." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (citing *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016)). A district court's subject-matter jurisdiction is limited to one of three types: "(1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA-FLA*, 844 F.3d at 1305 (quoting *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997)). A district court enjoys federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court also enjoys diversity "jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). "Diversity jurisdiction requires complete diversity: every plaintiff must be diverse from every defendant." *Torreyes v. Godiva Chocolatier, Inc.*, 424 F. Supp. 3d 1276, 1280 (S.D. Fla. 2019) (citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)).

"Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Moreover,

"citizenship should be 'distinctly and affirmatively alleged.'" *Kantrow v. Celebrity Cruises Inc.*, 533 F. Supp. 3d 1203, 1214–15 (S.D. Fla. 2021) (*Toms v. Country Quality Meats, Inc.*, 610 F.2d 313, 316 (5th Cir. 1980)). "Residence alone is not enough." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013). "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. . . . A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning . . . ." *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002) (per curiam) (citations and internal quotation marks omitted) (quoting *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974)). *See also Wells Fargo Bank, N.A. v. Bonaby*, No. 17-CIV-20266, 2017 WL 364460, at *2 (S.D. Fla. Jan. 25, 2017) (noting that citizenship "requires both residence in a state and an intention to remain there indefinitely" (citation and internal quotation marks omitted)). Additionally, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business" for diversity jurisdiction purposes. 28 U.S.C. § 1332(c)(1).

Based on the face of the Complaint, the Court cannot determine whether diversity jurisdiction exits in this matter. Specifically, Plaintiffs fail to allege their states of *citizenship*; instead, they allege their states of *residence*. *See Kantrow*, 533 F. Supp. 3d at 1215 ("Because Plaintiffs alleged their state of residency and not their state of citizenship, they have failed to properly plead their citizenship for purposes of diversity jurisdiction." (citation omitted)). For purposes of diversity jurisdiction, "[r]esidency is necessary, but insufficient, to establish citizenship in a state." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021). However, "it is undisputed that the Court has admiralty jurisdiction over this case irrespective of Plaintiffs' failure to allege diversity jurisdiction . . . ." *Kantrow*, 533 F. Supp. 3d at 1216 (citing

*Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1365 (11th Cir. 2018) ("Personal-injury claims by cruise ship passengers, complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts."). *See also Moyer v. Rederi*, 645 F. Supp. 620, 627 (S.D. Fla. 1986) ("Repeatedly the courts have declared that wrongful death actions deriving from an injury on the high seas fall under admiralty jurisdiction, even if death did not occur until the injured party had been brought on land.").

Because admiralty jurisdiction exists over this matter, "[m]aritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (per curiam)); *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case." (citations omitted)). "In the absence of well-developed maritime law, courts may supplement the maritime law with general common law and state law principles." *Marabella v. NCL (Bah.) Ltd.*, 437 F. Supp. 3d 1221, 1225 (S.D. Fla. 2020) (citing *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011)); *see also Just v. Chambers*, 312 U.S. 383, 388 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation.").

## II.     Whether DOHSA Applies to Plaintiff's Claims

In its Motion, Defendant argues that DOHSA applies to Plaintiffs' claims and, therefore, Plaintiffs' request for non-pecuniary damages should be stricken. [ECF No. 7 at 3–6]. Specifically,

Defendant argues that "DOHSA provides the exclusive remedy" to Plaintiffs' claims because they allege that Decedent "began to experience symptoms of COVID-19 while aboard the *Eclipse* on March 29, 2020," *id.* at 4, and, therefore, "alleges [that] he contracted COVID-19 on the high seas," *id.* at 3. Plaintiffs argue that it cannot be determined at this stage of the litigation whether DOHSA applies to Plaintiffs' claims. [ECF No. 12 at 1–4]. Specifically, Plaintiffs argue that a factual dispute remains as to whether Decedent "contracted COVID-19 within three (3) miles of California (which would preclude DOHSA application as a matter of law) *or* on the high seas (which could invoke DOHSA application)." *Id.* at 2.

DOHSA, 46 U.S.C. § 30301 *et seq.*, "was enacted to provide a uniform and effective wrongful death remedy for survivors of persons killed on the high seas." *Eisenman v. Carnival Corp.*, 424 F. Supp. 3d 1303, 1306 (S.D. Fla. 2019) (quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 214 (1986)). DOHSA provides, in relevant part, that:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

42 U.S.C. § 30302. "Where an action for wrongful death exists under DOHSA, the statute provides the exclusive remedy." *Perricone v. Carnival Corp.*, No. 15-CIV-20309, 2016 WL 1161214, at *5 (S.D. Fla. Mar. 24, 2016) (citations and internal quotation marks omitted). Specifically, "[t]he recovery . . . shall be a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought." 42 U.S.C. § 30303. Therefore, DOHSA "limits a plaintiff's recovery . . . [and] forecloses recovery for emotional injury and punitive damages." *LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1355 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2702 (2021). *See also Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1351 (S.D. Fla. 2008) ("Non-pecuniary

damages are not recoverable [under DOHSA].”). *See also Lasky v. Royal Caribbean Cruises, Ltd.*, 850 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012) (“As a preliminary matter, it is well-settled that where DOHSA applies, it preempts all other forms of wrongful death claims under State or general maritime law.”).

“Whether DOHSA is the applicable law is determined by the location where the negligence occurred.” *Perricone*, 2016 WL 1161214, at *5. “[A] cause of action under DOHSA accrues at the time and place where an allegedly wrongful act or omission was consummated in an actual injury, not at the point [where] previous or subsequent negligence allegedly occurred.” *Fojtasek v. NCL (Bah.) Ltd.*, 613 F. Supp. 2d 1351, 1354 (S.D. Fla. 2009) (quoting *Moyer v. Rederi*, 645 F. Supp. 620, 627 (S.D. Fla. 1986)). *See also Perricone*, 2016 WL 1161214, at *5 (“As long as the wrongful act, neglect, or default occurred on the *high seas*, DOHSA applies and preempts all other remedies.”). Courts that have considered whether DOHSA applies to COVID-19-related wrongful death actions “have concluded that the place where the plaintiff contracted COVID-19 determines DOHSA applicability.” *Paul v. Celebrity Cruises Inc.*, No. 21-CIV-20814, 2021 WL 7082839, at *9 (S.D. Fla. July 15, 2021) (collecting cases).

With regard to where Ivonne and the Decedent contracted COVID-19, the Complaint alleges that they were passengers on the *Eclipse* between March 1 and March 30, 2020, and contracted COVID-19 while aboard. The *Eclipse* departed from Argentina on March 1 for a fourteen (14) night Argentinian and Chilean cruise. The following day, a passenger (or passengers) aboard the *Eclipse* became symptomatic with flu-like symptoms consistent with a COVID-19 diagnosis. Plaintiffs allege that on March 9, 2020, numerous passengers began exhibiting respiratory symptoms aboard the vessel, which were consistent with positive COVID-19 diagnoses, and sought medical care aboard the vessel. On March 15, 2020, the *Eclipse* was denied

the ability to dock in San Antonio, Chile because of concerns of COVID-19 on the ship. As a result, the *Eclipse* set sail for San Diego to disembark passengers. According to Plaintiffs, on March 26, 2020, a passenger aboard the vessel visited the ship's infirmary and complained of symptoms consistent with a positive COVID-19 diagnosis. On March 29, 2020, Decedent began to feel unwell, including unusual fatigue—"a classic early symptom associated with a positive COVID-19 diagnosis." *Id.* at 21 ¶ 36(z). The next day, Ivonne and Decedent disembarked the *Eclipse* when it docked in San Diego.

Notably, the Complaint fails to specifically allege whether the *Eclipse* was on the high seas when Decedent contracted COVID-19—that is, whether the *Eclipse* was beyond three nautical miles from the shore of the United States when he contracted COVID-19. *See* 42 U.S.C. § 30302. Whether Plaintiffs intentionally omit this detail or not, the Court cannot determine at this time whether DOHSA applies to Plaintiffs' claims. Presumably, Decedent contracted COVID-19 prior to March 29, 2020, when he began to exhibit COVID-19 symptoms. *See, e.g.*, *Symptoms*, Ctrs. for Disease Control & Prevention (Feb. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited Mar. 19, 2022) ("Symptoms may appear 2-14 days after exposure to the virus."). However, such a determination is better made at summary judgment with the benefit of discovery. *See Macias v. Celebrity Cruises Inc.*, No. 21-CIV-20813, 2021 WL 5853585, at *6 (S.D. Fla. Nov. 19, 2021), *report and recommendation adopted*, No. 21-CIV-20813, 2021 WL 5834269 (S.D. Fla. Dec. 8, 2021). Therefore, Defendant's request to strike Plaintiffs' request for non-pecuniary damages in its Motion shall be denied without prejudice.

### III.   Negligent Misrepresentation Claims

Defendant also moves to dismiss Plaintiffs' negligent misrepresentation claims (Counts II and XV), arguing that they fail to meet the heightened pleading standard under Federal Rule of

Civil Procedure 9(b) and are based on non-actionable language. [ECF No. 7 at 6–9]. Defendant challenges two statements in the Complaint regarding Defendant's alleged misrepresentations to Ivonne and Decedent. The first states as follows:

> Misrepresenting to IVONNE DOME and ROBERT DOME while aboard the vessel that "[a]ll guests onboard remain healthy and happy" and/or misrepresenting that no person onboard had COVID-19; when in fact, a person(s) aboard the vessel during the subject voyage complained to Defendant/its agent(s) of symptoms consistent with COVID-19 and later tested positive and/or Defendant could not reasonably test the person(s) to confirm their diagnosis and reliably advise other passengers about whether or not there was an absence of COVID-19 cases aboard the vessel.

[ECF No. 1 at 28 ¶ 57(a)]. The second states as follows:

> Misrepresenting to IVONNE DOME and ROBERT DOME aboard the vessel that "[a]ll guests onboard remain healthy and happy" and/or misrepresenting that no person onboard had COVID-19; when in fact, a person(s) aboard the vessel during the subject voyage had displayed symptoms consistent with COVID-19 diagnoses.

*Id.* at 52 ¶ 136(a). As to the alleged misrepresentation that "no person onboard [the *Eclipse*] had COVID-19," Defendant argues that Plaintiffs fail to provide the requisite detail or specificity required of Rule 9(b). [ECF No. 7 at 6–7]. As to the Captain's statement that "[a]ll guests onboard remain healthy and happy," Defendant argues that the "broad generalizations regarding safety and health" that were made in the letters sent to passengers during the voyage "cannot form the foundation of a negligent misrepresentation claim" because the statements fail to state a material fact. *Id.* at 8–9.

> In order to bring a claim for negligent misrepresentation, a plaintiff must allege:
>
> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1352–53 (S.D. Fla. 2016) (quoting *Holguin v. Celebrity Cruises, Inc.*, No. 10-CIV-20212, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)). Because negligent misrepresentation is a fraud-based claim, it is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which is satisfied if the Complaint states:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1206 (S.D. Fla. 2020) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). "[T]o pass Rule 9(b) muster, the Complaint must set forth particular allegations about the 'who, what, when, where, and how' of the fraud." *Ceithaml*, 207 F. Supp. 3d at 1353 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)).

The Court need not engage in an overly extensive analysis of the disputed misrepresentations in the Complaint because two judges in this District have since considered identical language in cases related to the COVID-19 outbreak on the *Eclipse*. In *Landivar v. Celebrity Cruises Inc.*, Chief District Judge Cecilia M. Altonaga considered the statements that "no person onboard had COVID-19" and that "[a]ll guests onboard remain healthy and happy" on a motion to dismiss. Case No. 21-CIV-20815, [ECF No. 21 at 11–14] (S.D. Fla. July 12, 2021). As to the first statement, Judge Altonaga found that the statement did not meet the heightened pleading standard of Rule 9(b) because it did not "specify who said 'no person onboard had COVID-19' or when, where, and how the statement was made." *Id.* at 12. As to the second statement, Judge Altonaga found that representations that "[a]ll guests onboard remain healthy and

happy" could give rise to a cognizable negligent misrepresentation claim because "guests' health status is an ascertainable fact and statements regarding guests' health status are thus objective by nature." *Id.* at 13. As a result, Judge Altonaga denied the motion to dismiss as to the negligent misrepresentation claims. *Id.* at 14.

In *Martin v. Celebrity Cruises, Inc.*, District Judge Jose E. Martinez also considered the statements that "no person onboard had COVID-19" and that "[a]ll guests onboard remain healthy and happy" on a motion to dismiss. Case No. 21-CIV-20816, [ECF No. 26 at 4–8] (S.D. Fla. Mar. 11, 2022). As to the first statement, Judge Martinez also found that the statements that "no person onboard had COVID-19" failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) "because Plaintiffs did not specify who made the statement and when, where, and how the statement was made." *Id.* at 6. As to the second statement, Judge Martinez determined that "a reasonable passenger onboard the *Celebrity Eclipse* at the time Defendant is alleged to have made the subject statement could be found to have reasonably relied on that statement." *Id.* at 8. As a result, Judge Martinez also denied the motion to dismiss as to the negligent misrepresentation claims. *Id.*

The Court finds no need to stray from Judge Altonaga or Judge Martinez's analyses, which apply with equal force to the alleged misrepresentations here. Plaintiffs fail to provide the detail necessary to bring a claim for negligent misrepresentation based on the statement that "no person onboard had COVID-19." However, the Captain's statement that "[a]ll guests onboard remain healthy and happy"—which Plaintiffs properly support with "the 'who, what, when, where, and how' of the fraud"—is sufficient to support a claim for negligent misrepresentation. *See Ceithaml*, 207 F. Supp. 3d at 1353 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). Therefore, Defendant's Motion shall be denied as to Counts II and XV of the Complaint.

## IV.    Duty of Care to Non-passengers

In its Motion, Defendant seeks to dismiss all claims brought by Alec and Austin. [ECF No. 7 at 10–11]. First, Defendant argues that it does not owe Alec or Austin a duty of care because neither were passengers on the *Eclipse* and both contracted COVID-19 six days after being in a car with their parents. *Id.* Second, Defendant argues that Plaintiffs fail to allege that Defendant had actual or constructive notice that Ivonne and Decedent were infected with COVID-19 or that they were contagious. *Id.* at 11. Plaintiffs rely on a "foreseeable zone of risk" theory to argue that Alec and Austin "were foreseeable plaintiffs in connection with Defendant's intentional misrepresentation as to the (erroneous) absence of COVID[-19] on the vessel" and "that they would contract COVID-19 from their cruise passenger parents . . . ." [ECF No. 12 at 15].

Generally, a cruise line "is not liable to passengers as an insurer, but only for its negligence." *Keefe*, 867 F.2d at 1322 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984)). To bring a negligence claim, a plaintiff must allege that: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (per curiam) (citing *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008) (per curiam)).

"It is clearly established that cruise lines owe their passengers a duty to warn of known or foreseeable dangers." *Marabella v. NCL (Bah.), Ltd.*, 437 F. Supp. 3d 1221, 1225 (S.D. Fla. 2020) (citation omitted). The cruise line operator's duty of care is one that is "reasonable . . . under the circumstances." *Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1271 (S.D. Fla. 2020) ("A cruise line operator owes its passengers a duty of reasonable care under the circumstances."). "The duty to warn extends only to specific, known dangers . . . , not to general hazards." *Singh v. Royal*

*Caribbean Cruises Ltd.*, --- F. Supp. 3d ---, No. 20-CIV-24987, 2021 WL 6884873, at *11 (S.D. Fla. Dec. 10, 2021). However, the cruise line operator must have "actual or constructive notice of the risk-creating condition . . . ." *Keefe*, 867 F.2d at 1322. Thus, a cruise line operator breaches its duty to warn where: "(1) a dangerous condition existed that caused the claimed injury; and (2) a defendant had actual or constructive notice of the dangerous condition." *Adams*, 482 F. Supp. 3d at 1268 (citations omitted).

The Court finds that Alec and Austin's claims against Defendant are without merit. First, Plaintiffs fail to establish that Defendant owed a duty to Alec or Austin, who were never passengers on the *Eclipse*. *See Adams*, 482 F. Supp. 3d at 1271 ("A cruise line operator owes its *passengers* a duty of reasonable care under the circumstances." (emphasis added)). In fact, Plaintiffs do not present a single case which supports the proposition that the alleged negligence of a cruise line operator on the high seas can be extended to a non-passenger. Such an argument implies a "foreseeable zone of risk" that stretches Defendant's duty of care well beyond its reasonable bounds. *Contra Keefe*, 867 F.2d at 1322 ("[T]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances . . . .").

Second, Plaintiffs fail to properly allege that Defendant had actual or constructive notice that any passenger on the *Eclipse* in fact had COVID-19. Rather, Plaintiffs merely allege that other passengers exhibited symptoms consistent with COVID-19. While Plaintiffs attempt to establish notice based on the "increased risk of infection of COVID-19 in a cruise ship environment" and passengers exhibiting symptoms consistent with COVID-19, *see* [ECF No. 12 at 15], Defendant must have actual or constructive notice of "specific, known dangers . . . , not to general hazards." *Singh*, 2021 WL 6884873, at *11.

Because Plaintiffs fail to establish their negligence claims as to Alec and Austin, Defendant's Motion shall be granted, and Counts XX and XXI of the Complaint shall be dismissed with prejudice.

## V.    Intentional Infliction of Emotional Distress Claims

Defendant also moves to dismiss the IIED claims, arguing that Plaintiff's allegations "do not rise to the level of outrageousness sufficient to support an IIED claim." [ECF No. 7 at 12]. In opposition, Plaintiffs argue that Defendant "misrepresenting a material fact to the Plaintiffs concerning the positive health" of all guests on the *Eclipse* "is sufficiently 'outrageous' to support all of Plaintiffs' IIED claims . . . ." [ECF No. 12 at 19–20].

"Although maritime law does not explicitly provide a cause of action for emotional distress, Plaintiffs may nevertheless state an IIED claim in a maritime context." *Markham v. Carnival Corp.*, No. 12-CIV-23270, 2012 WL 12866787, at *3 (S.D. Fla. Dec. 3, 2012). "Courts sitting in admiralty typically look to the standards set out in the Restatement (Second) of Torts § 46 (1965) as well as state law to evaluate claims for intentional infliction of emotional distress." *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1317 (S.D. Fla. 2017) (quoting *Wu v. NCL (Bah.) Ltd.*, No. 16-CIV-22270, 2017 WL 1331712, at *2 (S.D. Fla. Apr. 11, 2017)). "That standard is the same one used by Florida courts to evaluate claims of intentional infliction of emotional distress." *McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1315 n.3 (11th Cir. 2021) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)). In order to state a claim for IIED, a plaintiff must allege: "(1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) that the conduct complained of caused the

plaintiff's severe emotional distress." *Blair v. NCL (Bah.) Ltd.*, 212 F. Supp. 3d 1264, 1269 (S.D. Fla. 2016).

Here, the parties dispute whether Defendant's conduct was sufficiently outrageous to support a claim for IIED. To establish the "extreme and outrageous conduct" element of an IIED claim, "a plaintiff must allege facts that show that a defendant's actions were 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Blair*, 212 F. Supp. 3d at 1270 (quoting *Metro. Life Ins. Co.*, 467 So. 2d at 278–79). "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Broberg*, 303 F. Supp. 3d at 1317–18 (quoting *Garcia v. Carnival Corp.*, 828 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012)). Moreover, whether conduct is sufficiently "outrageous" is a question of law for the Court to decide. *Blair*, 212 F. Supp. 3d at 1269–70.

In their Complaint, Plaintiffs allege that Defendant recklessly inflicted emotional distress on Ivonne and Decedent in the following ways:

    (1)    "Failing to timely and/or adequately screen passengers on land before allowing them to board the vessel for the subject voyage . . . so that Defendant could claim plausible deniability and/or ignorance as to their knowledge COVID-19 aboard the subject vessel if/when it actually occurred."

    (2)    "Failing to timely restrict passengers' buffet/group dining aboard the vessel, quarantine passengers and/or crew[,] and/or enact physical distance requirements aboard the vessel, . . . and instead, continuing to allow passengers and/or crew to congregate in close proximity to one another aboard the vessel for meals and/or entertainment."

    (3)    "Misrepresenting to passengers aboard the vessel that '[a]ll guests onboard remain healthy and happy' and/or misrepresenting that no person onboard had COVID-19; when in fact, a person(s) aboard the vessel during the subject voyage had displayed symptoms consistent with COVID-19 diagnoses; as such, Defendant's communications with passengers

> contrasted with the reality they observed aboard the vessel, thus causing fear and/or apprehension amongst passengers."

[ECF No. 1 at 54 ¶ 141(a); 56 ¶ 147(a); 58 ¶ 157(a)]. Two judges in this District have found that similar or identical allegations do not rise to the level of "outrageousness" needed to satisfy an IIED claim.

In *Kantrow v. Celebrity Cruises, Inc.*, Senior District Judge Joan A. Lenard found identical allegations to the ones here did not rise to the level of outrageousness needed to support an IIED claim. 510 F. Supp. 3d 1311, 1323–26 (S.D. Fla. 2020). There, the plaintiffs argued that Celebrity "lied, concealed the truth, and/or misrepresented to passengers, including [the plaintiffs], that all passengers aboard the vessel at that time were 'healthy' – implying that no one on the ship had contracted COVID-19 – when Celebrity knew that was not the case." *Id.* at 1323–24 (citations, internal quotation marks, and alternations omitted). Judge Lenard found that the plaintiffs' "allegations that Defendant lied, concealed, and misrepresented to its passengers that everybody onboard the *Eclipse* was healthy when it knew that was false . . . fails to rise to the level of outrageousness required by the applicable case law." *Id.* at 1325–26.

Similarly, in *Paul v. Celebrity Cruises Inc.*—a case in which a passenger died from COVID-19 after being on the *Eclipse*—Judge Lenard found that similar allegations do not meet the high bar needed to satisfy the "extreme and outrageous" standard of an IIED claim. 2021 WL 7082839, at *13–15. There, the plaintiffs' allegations of Celebrity "knowingly and intentionally failing to order passengers to isolate in their staterooms" and "deciding to conceal from passengers that a passenger on the subject voyage had symptoms of coronavirus . . . to make profit rather than ensure the reasonable safety and welfare of its passengers" were insufficient to sustain a claim for IIED because they did not satisfy the "extreme and outrageous conduct" element of the claim. *Id.* at *15 (citation omitted).

Finally, in *Macias v. Celebrity Cruises Inc.*—yet another case involving a passenger who died of COVID-19 after being on the *Eclipse*—Chief Magistrate Judge Edwin G. Torres found that similar allegations related to Defendant's conduct on the *Eclipse* were insufficient to support a claim for IIED because they did not satisfy the "extreme and outrageous conduct" element of the claim. 2021 WL 5853585, at *4–5. There, the plaintiffs argued that:

> Defendant's failure to warn them that [persons] aboard the *Celebrity Eclipse* had symptoms consistent with COVID-19, Defendant's failure to test symptomatic persons aboard the *Celebrity Eclipse* for COVID-19, Defendant's failure to recommend isolation and to quarantine symptomatic persons aboard the *Celebrity Eclipse*, Defendant's failure to suspend buffet service and other social gatherings, Defendant's disbursement of free alcoholic beverages to passengers, and Defendant's affirmative misrepresentation that "all guests" aboard the *Celebrity Eclipse* remained in good health after March 15, 2020 exceeds "all possible bounds of decency" and should be regarded as "atrocious and utterly intolerable" in a civilized community.

*Id.* at *4. Judge Torres determined that, similar to *Kantrow* and *Paul*, "the conduct alleged to have taken place aboard the *Celebrity Eclipse* in March 2020 . . . fail[s] to 'rise to the level of outrageousness' required by law." *Id.* at *5 (citations omitted). Importantly, Judge Torres considered two cases that Plaintiffs rely on here to support their IIED claim, finding that identical allegations to the ones in the Complaint "pale by comparison" and that "Defendant's actions might sound in negligence but certainly do not exceed all possible bounds of decency." *Id.* (considering *Thomas v. Hickman*, No. 06-0215-AWI, 2007 WL 470611 (E.D. Cal. Feb. 9, 2007) and *Dominguez v. Equitable Life Assurance Soc'y of U.S.*, 438 So. 2d 58 (Fla. 3d DCA 1983)).

The Court finds that the allegations in the instant Complaint fair no better. While they may support claims of negligence on the part of Defendant during the *Eclipse* voyage, they fail to show that Defendant's actions "were 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Blair*, 212 F. Supp. 3d at 1270 (quoting *Metro. Life Ins. Co.*, 467 So. 2d

at 278–79). Therefore, Defendant's Motion shall be granted and Counts XVI, XVII, XVIII, and XIX of Plaintiffs' Complaint shall be dismissed with prejudice. *See Macias*, 2021 WL 5853585, at *5 (dismissing IIED claims with prejudice); *Paul*, 2021 WL 7082839, at *15 (dismissing IIED claim with prejudice); *Kantrow*, 510 F. Supp. 3d at 1326 (dismissing IIED claims with prejudice).

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant Celebrity Cruises Inc.'s Motion to Dismiss Plaintiffs' Complaint, [ECF No. 7], is **GRANTED in part** and **DENIED in part**.

2.  Defendant's Motion is **DENIED without prejudice** regarding the applicability of the Death on the High Seas Act.

3.  Defendant's Motion is **DENIED** as to Counts II and XV of Plaintiffs' Complaint.

4.  Defendant's Motion is **GRANTED** as to Counts XVI, XVII, XVIII, XIX, XX, and XXI of Plaintiffs' Complaint.

5.  Plaintiffs' Complaint, [ECF No. 1], is **DISMISSED with prejudice** as to Counts XVI, XVII, XVIII, XIX, XX, and XXI.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of March, 2022.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE